PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PETER PAUL MITRANO,
          *Plaintiff-Appellant,*

v.

CHRISTOPHER J. HAWES, d/b/a CJH
Color and Design Group,
          *Defendant-Appellee.*

No. 03-1414

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-02-1841-A)

Argued: June 2, 2004

Decided: July 26, 2004

Before WILKINS, Chief Judge, LUTTIG, Circuit Judge,
and Louise W. FLANAGAN, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Vacated and remanded by published opinion. Chief Judge Wilkins
wrote the opinion, in which Judge Luttig and Judge Flanagan joined.

## COUNSEL

**ARGUED:** Peter Paul Mitrano, Merrifield, Virginia, for Appellant.
John William Toothman, Alexandria, Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Peter Paul Mitrano, an attorney proceeding pro se, appeals a district court order dismissing his breach of contract action based on improper venue.[1] We vacate the judgment and remand for further proceedings.

I.

In August 2000, Mitrano entered into an oral agreement to provide legal services to Christopher J. Hawes, doing business as CJH Color and Design Group. A trademark infringement action by L'Oreal Societe Anonyme was pending against Hawes in France because Hawes had registered a website domain name, <lorealcom plaints.com>, with Network Solutions, Inc. Because of the lawsuit, control of the domain name was deposited into the registry of the French court.

At the time of the agreement, Mitrano resided in New Hampshire, and Hawes resided in Massachusetts. Between December 2000 and January 2001, however, Mitrano moved to Virginia while continuing to provide legal services to Hawes. On April 12, 2001, Mitrano filed a lawsuit on Hawes' behalf against Network Solutions and L'Oreal Societe Anonyme in the Eastern District of Virginia ("Eastern District"), challenging the transfer of the domain name into the French court registry ("the underlying suit"). The district court dismissed the complaint, and on appeal, this court partially affirmed, partially reversed, and remanded for further proceedings. *See Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 379 (4th Cir. 2003).

On December 19, 2002, Mitrano filed this action against Hawes in the Eastern District, claiming that he provided approximately $579,280 in legal services to Hawes and that Hawes had only paid him $113,200. Hawes moved to dismiss, arguing that the district court lacked subject matter and personal jurisdiction and that venue was

---

[1]Mitrano also appeals an order denying his motion to reconsider.

improper in the Eastern District. The district court concluded that it had subject matter and personal jurisdiction. However, relying on our decision in *Broadcasting Co. of the Carolinas v. Flair Broadcasting Corp.*, 892 F.2d 372 (4th Cir. 1989), the district court reasoned that Massachusetts, rather than Virginia, was the proper venue because: (1) the contract was formed in Massachusetts; (2) the negotiations leading to the formation of the contract were held in Massachusetts; (3) the contract contemplated that services would be performed in Massachusetts or France; (4) actual performance of the contract occurred, in part, in Massachusetts; and (5) the alleged breach of the contract (failure to make payments) took place in Massachusetts. The district court therefore dismissed the action without conducting an evidentiary hearing.

Mitrano moved for reconsideration, arguing that the 1990 amendments to the federal venue statute, 28 U.S.C.A. § 1391 (West 1993 & Supp. 2004), rendered *Broadcasting Co.* obsolete. Mitrano argued that, under the amended statute, venue was proper in the Eastern District because he "performed a substantial part of the legal services for [Hawes] in [the Eastern District], namely research, drafting of pleadings, court appearances, court filings and review of the underlying litigation that relates to this action." J.A. 31-32 (internal quotation marks omitted). In addressing the motion, the district court recognized that under the amended version of § 1391, venue for a given suit could be appropriate in multiple districts. The district court nevertheless concluded that venue was not proper in the Eastern District because Mitrano's performance of legal work was "tangential, not substantial" to Mitrano's breach of contract claim. *Id.* at 36. The court therefore denied the motion for reconsideration.

## II.

Mitrano contends that the district court erred in ruling that venue was improper in the Eastern District. We agree.

We review the district court venue ruling de novo. *See United States v. Newsom*, 9 F.3d 337, 338 (4th Cir. 1993). To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue.

*See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

Prior to 1990, § 1391 provided that an action based on diversity of citizenship—as this one is—could be brought in the judicial district "in which the claim arose." 28 U.S.C. § 1391(a) (1988). When it was not clear that a claim arose in only one district, we applied a "weight of the contacts" test for determining venue under § 1391(a). *Broadcasting Co.*, 892 F.2d at 377 (internal quotation marks omitted). Under this test, venue was proper in the district having the most significant connection with the claim. *See id.* at 376.

In 1990, § 1391 was amended to make venue proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[2] Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 311(1), 104 Stat. 5089, 5114. Congress amended the statute because the prior language "led to wasteful litigation whenever several different forums were involved in the transactions leading up to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (citing Rep. of the Fed. Cts. Study Comm. 94 (Comm. Print 1990)). Under the amended statute, it is possible for venue to be proper in more than one judicial district. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). We therefore no longer apply the "weight of the contacts" test. *See Ciena Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir. 2000) (determining venue under amended statute without reference to "weight of the contacts" test). Additionally, in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001). Rather, it should review "the entire sequence of events underlying the

---

[2]An action may also be brought in a judicial district where a defendant resides, if all defendants reside in the same state, or where any defendant is subject to personal jurisdiction, if there is no other district in which the action may be brought. *See* 28 U.S.C.A. § 1391(a). Because Hawes resided in Massachusetts and venue would be proper in Massachusetts, neither provision would provide a basis for venue in Virginia.

claim." *Id.*; *see First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998).

Applying these principles here, we conclude that Mitrano's work under the contract constituted "a substantial part of the events [and] omissions giving rise to [Mitrano's] claim" for breach of contract. 28 U.S.C.A. § 1391(a). Indeed, it was Mitrano's work that allegedly created his entitlement to the payment he now seeks. For that reason, depending on the amount of work that Mitrano completed in the Eastern District, that work alone may be sufficient to justify venue there. This conclusion is strongly supported by *Uffner*, which concerned a bad faith claim-denial action against an insurer arising out of the sinking of a yacht it insured. There, the First Circuit held that the sinking of the yacht was a "substantial part of the events or omissions giving rise to the claim" even though the claim did not concern how, when, or why the accident occurred. *See Uffner*, 244 F.3d at 43. The court reached that conclusion because the sinking of the vessel, like Mitrano's performance of the legal services at issue here, was the event that allegedly entitled the plaintiff to the payment sought under the contract. *See id.*

Because we reject the analysis of the district court, we vacate the dismissal order and remand for reconsideration of the venue issue. However, we note that a question apparently not previously addressed by the parties or the district court is exactly what portion of Mitrano's work was performed in the Eastern District.[3] We will not attempt to delineate exactly how much work Mitrano would need to have completed in the Eastern District to support venue there, but rather, will leave that legal question to the district court to answer in the first instance on remand along with the factual question of how much work Mitrano actually performed in the Eastern District.

## III.

Hawes argues that even if venue is proper in the Eastern District,

---

[3]Mitrano stated in his declaration that it was "a substantial part," J.A. 31 (internal quotation marks omitted), and he maintained at oral argument that it was "more than half" of the work.

we should affirm the dismissal of Mitrano's suit on the basis that the district court lacked personal jurisdiction over Hawes. We disagree.

When a district court rules on personal jurisdiction without holding an evidentiary hearing, we view the facts in the light most favorable to the plaintiff and determine de novo whether he has made a prima facie showing of personal jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). To establish personal jurisdiction over a nonresident defendant through a state long arm statute, a court must first determine that jurisdiction is authorized by state law. *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993). If it is, the court must next decide whether exercise of personal jurisdiction would be consistent with due process. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).

Virginia's long arm statute extends personal jurisdiction to the limits allowed by due process. *See id.*; Va. Code Ann. § 8.01-328.1 (LexisNexis Supp. 2003). And, for a district court to exercise its jurisdiction consistently with due process requirements, a defendant before it must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The standard for determining whether a court may exercise personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state provide the basis for the suit. *See Carefirst of Md.*, 334 F.3d at 397. If so, those contacts may establish "specific jurisdiction." *See id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984). To decide whether specific jurisdiction exists, we examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (alteration & internal quotation marks omitted). A defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been "directed at

the forum state in more than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).

Here, Mitrano contends that Hawes purposefully directed his activities into Virginia by prosecuting the underlying suit there. Although it is undisputed that Mitrano's breach of contract case arises out of the action that Mitrano and Hawes prosecuted in Virginia, Hawes argues that he did not purposefully direct his activities toward Virginia and that it would be unfair for him to defend Mitrano's suit there because it was Mitrano, not Hawes, who selected the forum for the underlying suit. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). However, even assuming Hawes was not involved in the initial selection of the forum, viewing the record in the light most favorable to Mitrano, Hawes knew that the suit had been filed there. Indeed, Hawes admits in his declaration that Mitrano provided him with "copies of papers that he had filed . . . in the U.S. District Court in Alexandria, Virginia . . . ." J.A. 65. Thus, Hawes' knowing continuation of the suit in Virginia demonstrates that his availment of Virginia's legal protections was purposeful. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002) ("Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct."); *Int'l. Med. Group v. Am. Arbitration Ass'n*, 312 F.3d 833, 845 (7th Cir. 2002) (attributing the actions of the defendant's attorneys to the defendant for purposes of determining the existence of personal jurisdiction); *cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 n.22 (1985) (stating that commercial activities performed on a party's behalf "may sometimes be ascribed to the party" but not "resolv[ing] the permissible bounds of such attribution"). And, considering that Hawes allowed Mitrano to continue to litigate on his behalf in Virginia, there is nothing unfair about requiring him to defend the resulting fee suit in the same forum.[4]

---

[4]Hawes maintains that if we determine that the district court possessed personal jurisdiction over him and that venue was appropriate in Vir-

## IV.

For the foregoing reasons, we hold that the district court correctly concluded that Mitrano made out a prima facie case of personal jurisdiction over Hawes, but we reject the basis provided by the district court for dismissing Mitrano's suit for lack of venue. We therefore vacate the dismissal order and remand for reconsideration of the venue issue.

*VACATED AND REMANDED*

---

ginia, this action should be transferred to Massachusetts pursuant to 28 U.S.C.A. § 1404(a) (West 1993) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). Mitrano also argues that he is entitled to summary judgment on the merits of his claim. Because the district court has never ruled on these issues, we will allow that court to address them in the first instance should the court conclude on remand that venue is proper.