Richard "Bud" STEEN and Lloydene
Steen, Plaintiffs,

v.

Robert MURRAY;  Lamson, Dugan
& Murray, LLP;  and Ryan
Boe, Defendants.

No. 1:12–cv–00021.

United States District Court,
S.D. Iowa,
Western Division.

Jan. 15, 2013.

Andre R. Barry, James M. Bausch, Cline Williams Wright Johnson & Oldfather LLP, Omaha, NE, Peter J. Leo, James W. Redmond, Heidman Law Firm, Sioux City, IA, for Defendants.

Marc S. Harding, Harding Law Office, PC, Des Moines, IA, for Plaintiffs.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is a Motion to Transfer for Improper Venue ("Defendants' Motion"), filed by Robert Murray ("Murray"), Lamson, Dugan & Murray, L.L.P. ("LDM"), and Ryan Boe ("Boe") (collectively "Defendants") on October 4, 2012. Clerk's No. 25. On October 18, 2012, Richard Steen and Lloydene Steen (collectively "Plaintiffs") filed a resistance. Clerk's No. 28. Defendants replied to Plaintiffs' resistance on October 19, 2012. Clerk's No. 29. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2003, Plaintiffs' past due debt to their lender—Farm Credit Services of America ("Farm Credit")—forced them to sell a portion of their farm in Emerson, Iowa to avoid a foreclosure proceeding by Farm Credit. *See* Murray Aff. (Clerk's No. 25–2) ¶¶ 5–6, Ex. A; Boe Aff. (Clerk's No. 25–3) ¶¶ 4–5; Richard "Bud" Steen Aff. (Clerk's No. 28–3) ¶¶ 5–6. Plaintiffs allege that they "retained[1] Defendants to represent them in various negotiations and drafting involving [the sale of their] real estate." *See* Third Am. Compl. (Clerk's No. 32) ¶ 10. Pursuant to their agreement with Plaintiffs, Defendants were to draft a real estate purchase agreement (the "Agreement") and "a first option to purchase or a first right of refusal" (the "Option"). *See id.* ¶ 13. Instead, Defendants drafted "an unrestricted option in favor of the purchaser," whom Defendants also al-

---

**1.** Plaintiffs did not include a copy of this retainer agreement as an exhibit to the Complaint.

legedly represented, thus favoring that purchaser over Plaintiffs. *See id.* ¶¶ 14–16. On July 20, 2012, Plaintiffs filed this lawsuit [2] in the Southern District of Iowa, claiming that, by representing both parties to the Agreement and by failing to disclose that fact to Plaintiffs, Defendants breached their contract with and their ethical duties to Plaintiffs.[3] *See id.* ¶¶ 19, 22–27. Defendants now claim that venue in this District is improper and seek to transfer this case to the District of Nebraska pursuant to 28 U.S.C. § 1406. *See* Defs.' Mot. at 1.

## II. LAW AND ANALYSIS

The relevant venue statute, 28 U.S.C. § 1391(b) provides:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

If a plaintiff files a case in the wrong district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

Defendants argue that the Southern District of Iowa is an improper venue for this lawsuit because "none of [§ 1391(b)'s] sub[ ]sections provides a basis for venue in . . . [this District]." *See* Defs.' Br. in Supp. of Their Mot. to Transfer for Improper Venue ("Defs.' Br.") (Clerk's No. 25–1) at 4. Instead, Defendants claim that the District of Nebraska is the proper venue. *See id.* § III.D. Plaintiffs disagree, arguing that § 1391(b) provides a proper basis for venue in this District because "[a] substantial part of the events giving rise to [Plaintiffs'] claim[s] occurred here in Iowa." [4] *See* Pls.' Br. Resisting

---

**2.** Plaintiffs have amended their original complaint (Clerk's No. 1) three times. *See* Clerk's Nos. 5, 17, 32. The first two amendments were necessary to correct Plaintiffs' allegations of diversity jurisdiction. *See* Pre–Screening Orders (Clerk's Nos. 2, 6). With the third amendment, Plaintiffs added language specifying when they discovered Defendants' alleged wrongful conduct. *See* Pls.' Mot. for Permission to File Third Am. Compl. (Clerk's No. 18) ¶ 3.

**3.** It is unclear whether Plaintiffs are suing for malpractice in addition to suing for breach of contract and breach of ethical duties. *See* Third Am. Compl. ¶¶ 20 ("The malpractice was discovered in October, 2008."), 29 ("The professional negligence of Defendants precluded Plaintiffs [from] retaining ownership of farm ground that had been in [their] family for many decades."), 30 ("If it were not for the negligence of the Defendants, the lawsuit to force the sale of the land would not have

been brought."). For purposes of this Order, the Court will assume that Plaintiffs are only suing for breach of contract and breach of ethical duties because those are the only two claims pled in the Complaint. *See id.* at 3.

**4.** Plaintiffs incorrectly state that Defendants seek to transfer venue pursuant to 28 U.S.C. § 1404(a) because the Southern District of Iowa is an inconvenient forum. *See* Pls.' Resistance Br. at 2. Even a cursory examination of the Motion and supporting brief highlights the crux of Defendants' argument, i.e. that the Court should transfer this case to the District of Nebraska not for convenience, but because venue in this District is improper. *See* Defs.' Mot. at 1 ("COME NOW Defendants . . ., pursuant to 28 U.S.C. § 1406, and move the Court to transfer this action to the District of Nebraska, on the grounds that venue in this District is improper and venue in the District of Nebraska is proper pursuant to the provisions of 28 U.S.C. § 1391."); Defs.' Br. § III

Defs.' Mot. ("Pls.' Resistance Br.") (Clerk's No. 28–1) at 3.

Thus, the issue before the Court is whether § 1391(b)(2) provides a basis for venue in this District.[5] The venue provisions protect a defendant from the inconvenience of defending a lawsuit in a federal district court "that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed.Cir.1990) (internal citations omitted). Where, as here, a defendant challenges venue, the plaintiff bears the burden of establishing that the chosen venue is proper. *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F.Supp. 731, 735 (S.D.N.Y.1996) (internal citation omitted).

Section 1391(b)(2) provides that a lawsuit may be brought in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." Thus, venue may be proper in more than one district. *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir.2004). Accordingly, venue in the Southern District of Iowa will be proper even if another district has a closer connection to the claims in this lawsuit because § 1391(b)(2) only requires that a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this District. *See Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir.1994) ("[W]e ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts."); *Advanced Logistics Consulting, Inc. v. C. Enyeart, L.L.C.*, No. 09–cv–720, 2009 WL 1684428, at *3, 2009 U.S. Dist. LEXIS 50603, at *9 (D.Minn. June 16, 2009) ("[T]he Court need not decide that it is the 'best' venue or the one having the most significant connection to the claims at issue.").

The inquiry into this substantiality requirement is more of a qualitative than a quantitative nature. *See Cold Spring Harbor Lab. v. Ropes & Gray, L.L.P.*, 762 F.Supp.2d 543, 553 (E.D.N.Y. 2011) (internal citation and quotation marks omitted); *In re Tex. Prison Litig.*, No. 98–7110, 1999 U.S. Dist. LEXIS 11120, at *4 (W.D.Mo. Feb. 17, 1999) ("In analyzing whether substantial events or omissions occurred in Missouri, the court con-

(analyzing § 1391(b)'s three subsections and concluding that none of them provides a basis for venue in the Southern District of Iowa). Although Plaintiffs misconstrue Defendants' argument, the substance of their resistance is that venue in this District is proper pursuant to § 1391(b)(2). *See, e.g.*, Pls.' Resistance Br. at 3 ("A substantial part of the events giving rise to this claim occurred here in Iowa."), 5 (stating, among other things, that Defendants "were dealing with Iowa land, . . . Iowa law, . . . an Iowa mortgage held by an Iowa Mortgagor, . . . [and] Iowa drafting for Iowa purposes, to be filed in an Iowa courthouse"). Thus, Plaintiffs' response to the Motion seems on point.

5. Plaintiffs do not resist Defendants' assertion that neither § 1391(b)(1) nor § 1391(b)(3) provides a basis for venue in this District. *See generally* Pls.' Resistance Br. Indeed, since neither Defendant appears to reside in Iowa, *see* Third Am. Compl. ¶¶ 3, 6, section 1391(b)(1) does not afford a proper basis for venue in this District. *See* 28 U.S.C. § 1391(b)(1) (providing that a lawsuit may be filed in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Section 1391(b)(3) is similarly unavailing because, as discussed in §§ II.A and II.B of this Order, § 1391(b)(2) affords proper venue in the District of Nebraska. *See* 28 U.S.C. § 1391(b)(3) (providing that *"if there is no district in which an action may otherwise be brought as provided in this section*, [the action may be filed in] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" (emphasis added)). Accordingly, this Order only discusses whether venue in this District is proper pursuant to § 1391(b)(2).

siders not merely the number of events or omissions, but how significant they were to the genesis of the dispute."). To conduct this inquiry, the Court must: (1) consider the nature of Plaintiffs' claims and the acts or omissions underlying those claims; and (2) determine whether substantial events or omissions material to those claims occurred in this District. *See Catipovic v. Turley,* No. C 11–3074, 2012 WL 2089552, at *17–18, 2012 U.S. Dist. LEXIS 79824, at *52–55 (N.D.Iowa June 8, 2012). Under controlling Eighth Circuit case law, in deciding whether a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, the Court must focus only on Defendants' alleged wrongful activities. *See Woodke v. Dahm,* 70 F.3d 983, 985–86 (8th Cir.1995); *Catipovic,* 2012 WL 2089552, at *17–18, 2012 U.S. Dist. LEXIS 79824, at *52–53 (citing *Woodke,* 70 F.3d at 985).

■ Applying this framework to the present case, the Court concludes that venue in this District is improper. Plaintiffs maintain that the following alleged wrongful conduct underlies both of their claims: (1) Defendants drafted the Option in a way that favored the purchaser, *see* Third Am. Compl. ¶ 23 ("Defendants in their conduct . . . favored the purchaser."), ¶ 26 ("Defendants were, in fact, representing and favoring the purchaser."); and (2) "Defendants . . . failed to disclose to Plaintiffs their divided loyalties," *id.* ¶ 19; *see also id.* ¶ 25 ("Plaintiffs believed at all times that they were being represented by the Defendants, that their sole loyalties were to them."). For reasons that follow, the Court has determined that both of the alleged wrongdoings occurred in the District of Nebraska.

### A. *Failure To Disclose Dual Representation*

It is axiomatic that Defendants' failure to inform Plaintiffs of their alleged dual representation forms a substantial part of the events or omissions giving rise to the claims in this case. This alleged wrongdoing presents an interesting dilemma because Defendants' failure to disclose their "divided loyalties" is an omission, i.e. an event that did not occur. The Court concludes, however, that to the extent that this omission could be said to have occurred anywhere, it occurred in Nebraska because Defendants' duty to disclose the fact of the alleged dual representation arose when Murray learned in a telephone call, while in his office in Omaha, Nebraska, that Plaintiffs and the purchaser of their land had reached an agreement. *See* Murray Aff. ¶ 6.

"[Defendants'] duty of good faith [owed] to . . . [Plaintiffs] require[d] . . . [Defendants] to make the disclosure [concerning 'their divided loyalties'] in sufficient time to enable . . . [Plaintiffs] to determine whether to proceed with the transaction. . . ." RESTATEMENT (THIRD) OF AGENCY § 8.06 cmt. d(1). Plaintiffs' motive for entering the Agreement was to generate funds and avoid an otherwise imminent foreclosure proceeding by Farm Credit. *See* Murray Aff. ¶¶ 5–6; Boe Aff. ¶¶ 4–5, Ex. A at 4 (showing that the Agreement was executed on March 9, 2003, a mere six days after Plaintiffs reached an agreement with the purchaser of their land); Richard "Bud" Steen Aff. ¶¶ 5–6. In light of the fact that Plaintiffs apparently needed these funds quickly, Defendants' duty of good faith demanded that they inform Plaintiffs of the alleged dual representation immediately upon learning the identity of the purchaser, so that Plaintiffs could consider whether to hire different counsel or whether to proceed with the transaction at all. *See* RESTATEMENT (THIRD) OF AGENCY § 8.06 cmt. d(1). Therefore, Defendants should have informed Plaintiffs of the alleged dual representation on March 3, 2003 when Murray, while in his Omaha,

Nebraska office, spoke to Plaintiffs via telephone. Accordingly, Defendants' omission occurred in the District of Nebraska, rendering venue in this District improper.

### B. *Drafting the Option*

As with Defendants' failure to disclose, the Court concludes that Defendants' work in drafting the Option also constitutes a substantial part of the events or omissions giving rise to Plaintiffs' two claims. *See Mitrano*, 377 F.3d at 405–06 (stating that the plaintiff's "work under the contract constituted 'a substantial part of the events [and] omissions giving rise to [his] claim' for breach of contract" because it was such work that "allegedly created his entitlement to the payment" he sought by filing the lawsuit). Accordingly, venue in this District will be proper if Defendants completed such portion of the drafting of the Option in Iowa that is "sufficient to justify venue" here.[6] *See id.* at 406. Defendants assert, however, that the entire process of drafting the Agreement and the Option took place at their offices in Omaha, Nebraska. *See* Defs.' Br. at 1 ("[A]ll of Defendants' alleged misconduct occurred at their office in Omaha, Nebraska, where the Option and the ... Agreement were drafted."), 3 ("No one from LDM traveled to Iowa in the course of

drafting the ... Agreement or the Option.... All of the legal work described in Plaintiffs' factual allegations was performed in Nebraska, and not in the Southern District of Iowa."), Murray Aff. ¶¶ 8–10, Boe Aff. ¶¶ 10–11. By not disputing this assertion, Plaintiffs apparently concede that Defendants did not do any work in connection with the drafting of the Agreement or the Option in Iowa.[7] *See generally* Pls.' Resistance Br. Instead, they argue that Defendants' "minimum contacts" with Iowa are sufficient to justify venue in this District. *See id.* at 2 ("Murray has a long history of Iowa farm dealings. [He] stated under oath 'I did an awful lot of work in the Montgomery County area' in Iowa in the 1980's...."), 4 ("Murray and Boe purposefully directed their actions toward Iowa residents, and to Iowa property."), 5 (stating, among other things, that "Defendants knew that they were dealing with two parties that were both located in Iowa, that they were dealing with Iowa land, ... with Iowa law, ... with the release of an Iowa mortgage held by an Iowa mortgagor, ... [and] with Iowa drafting for Iowa purposes, to be filed in an Iowa courthouse," which establishes that Defendants have "more than minimum contacts with Iowa"). "The test

---

6. The Court is mindful that in deciding whether a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this District, it should "review the entire sequence of events underlying the claim[s]," rather than only "those matters that are in dispute or that directly led to the filing of the action." *Mitrano*, 377 F.3d at 405 (internal citations and quotation marks omitted). Such a review would be a futile endeavor in this case, however. Although the Court should examine "the entire sequence of events" underlying Plaintiffs' claims, it must nevertheless consider only Defendants' alleged wrongful conduct, i.e. drafting the Option in a way that favored the purchaser's interests over Plaintiffs' and failing to disclose

to Plaintiffs the fact that they were also representing the purchaser of Plaintiffs' land. *See Woodke*, 70 F.3d at 985–86. As discussed in §§ II.A and II.B of this Order, both the faulty drafting of the Option and the failure to disclose the dual representation occurred in the District of Nebraska.

7. Plaintiffs' conclusory assertion that "[a] substantial part of the events giving rise to [their] claim[s] occurred ... in Iowa" is their only attempt to meet their burden of proving that venue in this District is proper. *See* Pls.' Resistance Br. at 3. This blanket assertion, however, is, by itself, insufficient to justify venue in this forum.

for determining venue[, however,] is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim....' "[8] *Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994). "It would be [an] error ... to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 357 (2d Cir.2005); *accord United States ex rel. Rudick v. Laird,* 412 F.2d 16, 20 (2d Cir.1969) ("The concepts of personal jurisdiction and venue are closely related but nonetheless distinct."). Therefore, Plaintiffs' recitation of facts establishing Defendants' minimum contacts with Iowa is irrelevant to the Court's venue analysis. Accordingly, the Court finds that Plaintiffs have failed to meet their burden of establishing that venue in this District is proper.

## III. CONCLUSION

For the reasons above, Defendants' Motion (Clerk's No. 25) is hereby GRANTED. The Clerk of Court shall transfer this case to the United States District Court for the District of Nebraska.

IT IS SO ORDERED.

---

**8.** Although not apparent from a plain reading of their resistance, Plaintiffs also argue that venue in this District is proper because their injury occurred in Iowa. *See* Third Am. Compl. ¶¶ 21, 30 (alleging that Defendants' wrongful conduct caused Plaintiffs to expend substantial funds in defending a lawsuit in Iowa that arose out of Defendants' faulty drafting of the Option), 29 (alleging that Defendants' faulty drafting of the Option caused Plaintiffs to lose ownership of Iowa farm ground that had been in Plaintiffs' family for decades); Pls.' Resistance Br. at 1 (stating that the events giving rise to this lawsuit involve Iowa land), 2 (stating that Defendants' "faulty drafting led to a lawsuit in Iowa ... against Plaintiffs" forcing them to expend funds in defending that lawsuit). Under established Eighth Circuit law, however, such argument is unavailing. *See Wisland v. Admiral Beverage Corp.,* 119 F.3d 733, 736 (8th Cir.1997) (rejecting the plaintiff's argument that venue was proper in Wisconsin, where the plaintiff received the majority of her medical treatment, "because a substantial part of the events giving rise to her damage claims occurred [there]" and holding, instead, that venue was proper in South Dakota because "the events giving rise to her action involve[d] the alleged negligence of the defendants in South Dakota"); *Catipovic,* 2012 WL 2089552, at *15, 2012 U.S. Dist. LEXIS 79824, at *44 (stating that "the district in which 'a substantial part of the events or omissions giving rise to the claim occurred,' within the meaning of § 1391( [b] )(2), means where the events giving rise to the *action* occurred, not where the events giving rise to the plaintiff's *damages* occurred" (emphasis in original)) (citing *Wisland,* 119 F.3d at 736).