**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2310**

PTA-FLA, INC.,

        Plaintiff - Appellant,

    v.

ZTE CORPORATION, a Corporation Incorporated under the Laws of the People's Republic of China,

        Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:12-cv-02616-CMC)

Argued:  September 15, 2017             Decided:  November 15, 2017

Before GREGORY, Chief Judge, and WYNN and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

**ARGUED:** Shannon Gallagher, Tustin, California, for Appellant.  Thomas Payne Schmidt, HOGAN LOVELLS US LLP, New York, New York, for Appellee.  **ON BRIEF:** Joshua E. Austin, PTA-FLA, INC., Columbia, South Carolina, for Appellant.  Frank T. Spano, HOGAN LOVELLS US LLP, New York, New York; Laura Besvinick, STROOCK & STROOCK & LAVAN LLP, Miami, Florida; James Lynn Werner, Lawrence M. Hershon, PARKER POE ADAMS & BERNSTEIN, LLP, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

PTA-FLA, Inc., a cellular telephone network service provider, appeals from the dismissal of its claims against ZTE Corporation ("ZTE Corp."), a Chinese manufacturer of telecommunications equipment. The district court dismissed PTA-FLA's breach of contract claim without prejudice for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). The district court also dismissed with prejudice PTA-FLA's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, we affirm.

I.

We review de novo a district court's decision to dismiss claims for lack of personal jurisdiction or for failure to state a claim, and we view the facts in the light most favorable to the plaintiff. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) (dismissal under Rule 12(b)(2)); *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (dismissal under Rule 12(b)(6)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Naked assertions" within a complaint must be accompanied by some "factual enhancement" to cross "the line between possibility and plausibility." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

3

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A.

PTA-FLA is one of several affiliated companies that collectively conduct a cellular telephone network business under the name "ClearTalk." PTA-FLA is a Florida corporation with its principal place of business in Columbia, South Carolina. ZTE Corp. is incorporated in and has its principal place of business in Shenzhen, China. ZTE USA, Inc. is a U.S.-based subsidiary of ZTE Corp. Although its role in this dispute is relevant, it's not a party to this action.

PTA-FLA's claims arise out of an agreement and subsequent addenda entered into between one of its affiliates, Daredevil, Inc., and ZTE USA to purchase equipment for a cellular telephone network in Missouri. The initial agreement required ZTE USA to ship cellular network base stations from China to St. Louis and to provide Daredevil with special pricing on certain cellular telephone handsets. The agreement also contained a Missouri choice of law provision. Neither the initial agreement nor its addenda were negotiated or entered into in South Carolina.

After a series of difficulties caused ClearTalk to abandon its plan to enter the Missouri market, representatives of ZTE USA and ZTE Corp. orally promised ClearTalk representatives that they would deliver 139 cellular network base stations originally intended for use in Missouri to Daredevil's affiliate, PTA-FLA, in South Carolina.

ZTE Corp. eventually sent an initial shipment of cellular network base stations from its factory in China to Clear Talk in South Carolina. Although the shipment appeared to

4

be complete, it contained only enough parts to assemble sixty-four functional base stations. ZTE USA and ClearTalk then signed an addendum to the original Missouri agreement between ZTE USA and Daredevil, which acknowledged the delivery of the base stations[1] and committed ClearTalk to take delivery of forty additional base stations in Yakima, Washington. Under the addendum, ClearTalk could request that ZTE USA deliver the remaining base stations to any of its markets, including "the Carolinas," Tennessee, Washington, and Idaho. J.A. 124. ZTE Corp., however, did not ship any more base stations.

## B.

PTA-FLA sued ZTE Corp. in the District of South Carolina, asserting four claims in its complaint: breach of contract, tortious interference with contract, promissory estoppel, and violation of SCUTPA. On appeal, PTA-FLA challenges only the district court's dismissal of the breach of contract claim and the SCUTPA claim.

PTA-FLA's breach of contract claim alleges that ZTE Corp. is a party to the agreements entered into by Daredevil and ClearTalk, and that PTA-FLA is a third-party beneficiary of those agreements. PTA-FLA says that ZTE Corp. breached the agreement to redirect base stations intended for Missouri by failing to ship complete base stations to Yakima, Washington. PTA-FLA also asserts that ZTE Corp. breached the initial Missouri agreement by refusing to ship handsets to an unspecified location.

---

[1] The record conflicts on whether the actual number of base stations shipped to South Carolina was sixty-four (as the complaint pleads) or sixty-five (as the written addendum asserts). The actual number, however, doesn't matter for our purposes.

PTA-FLA's SCUPTA claim asserts that ZTE Corp. shipped goods to South Carolina "in a deceptive manner to appear as if a full order had been shipped when it had not," and that ZTE Corp. shipped a "partial order of goods in an attempt to extract further concessions" from PTA-FLA. J.A. 113. PTA-FLA says that the shipment had an adverse impact on the public interest because it "delayed Plaintiff's attempt to bring affordable wireless service to South Carolina residents." *Id.* And, says PTA-FLA, there is potential for repetition of such incomplete shipments because it is ZTE Corp.'s "standard procedure" to gain entry into the U.S. market "by overpromising its capabilities to small carriers and using those carriers as guinea pigs to learn how to build a United States network through trial and error at the small carriers' expense." J.A. 114. PTA-FLA's complaint includes five examples of conduct by ZTE Corp. to demonstrate the potential for repetition of the incomplete shipments. Four examples allege deception regarding compliance with U.S. technological standards, and the other alleges a deceptive promise to ship certain goods on time.

The district court dismissed without prejudice PTA-FLA's breach of contract, tortious interference with contract, and promissory estoppel claims for lack of personal jurisdiction and, in the alternative, for failure to state a claim. It dismissed with prejudice PTA-FLA's SCUTPA claim for failure to state a claim. PTA-FLA moved to alter or amend the judgment under Rule 59(e), asking the district court to reconsider its dismissal of the

6

breach of contract and SCUTPA claims. The district court denied the motion and this appeal followed.[2]

## II.

## A.

We turn first to the district court's decision to dismiss PTA-FLA's breach of contract claim for lack of personal jurisdiction. PTA-FLA contends that it made a prima facie showing of specific personal jurisdiction over ZTE Corp. by pleading that ZTE Corp. agreed to send equipment intended for Missouri to South Carolina and shipped equipment directly from China to ports in South Carolina.

ZTE Corp. responds (and the district court agreed) that the allegations underlying PTA-FLA's breach of contract claim have nothing to do with South Carolina. Rather, PTA-FLA alleges in its complaint that ZTE Corp. breached various contracts by (1) failing to ship base stations to Yakima, Washington and (2) failing to ship handsets to an unspecified location. ZTE Corp. argues that allegations of contacts in the forum state unrelated to PTA-FLA's claim are not enough to support specific personal jurisdiction.[3]

---

[2] Although PTA-FLA's notice of appeal mentions only the district court's denial of its Rule 59(e) motion, we may properly review the underlying orders of the district court. *See Brown v. French*, 147 F.3d 307, 311 (4th Cir. 1998) ("Every circuit court to address the question has held that designation of a postjudgment motion in the notice of appeal is adequate to support a review of the final judgment when the intent to do so is clear."). Here, the underlying order is the district court's order dismissing PTA-FLA's claims.

[3] The district court also found that ZTE Corp. was not a party to any of the contracts described in PTA-FLA's complaint. PTA-FLA argues at length that the district court was

When a district court considers a motion to dismiss for lack of personal jurisdiction on the basis of motion papers, supporting memoranda, and the relevant allegations of a complaint without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). We have described the prima facie test as "tolerant." *Id.* at 677. In deciding whether a plaintiff has made such a showing, the district court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

"A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Where the forum state's long-arm statute is coextensive with due process, as it is in South Carolina, the court's inquiry becomes simply whether the exercise of jurisdiction comports with due process. *See* S.C. Code Ann. § 36-2-803; *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).

---

wrong. But the district court also held that even if ZTE Corp. were a party to the contracts, the particular breaches alleged lack sufficient contact with South Carolina. Because we affirm on this reasoning, we do not address whether PTA-FLA pleaded sufficient jurisdictional facts to support a finding that ZTE Corp. was a party to the contracts.

Personal jurisdiction may be general or specific. General personal jurisdiction over a defendant arises from the defendant's "continuous and systematic" activities in the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction, on the other hand, depends on an "activity or an occurrence that takes place in the forum State" and is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). There is no suggestion in this case that ZTE Corp.'s contacts with South Carolina rise to the level of "continuous and systematic" to support the assertion of general personal jurisdiction over the company. Accordingly, we consider only whether the facts alleged support a finding of specific jurisdiction.

We conduct a three-part inquiry to determine whether the exercise of specific jurisdiction over a party meets the requirements of due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ESAB Grp.*, 685 F.3d at 391–92 (internal quotation marks omitted).

In this case, we focus on the second part of this inquiry—whether the claim arises out of activities directed at the forum state. For a court to exercise specific jurisdiction over a claim, there must be "an affiliatio[n] between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a

9

defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017).

Applying these principles, we agree with the district court that PTA-FLA has not established a prima facie case of personal jurisdiction over ZTE Corp. in South Carolina with respect to its breach of contract claim.

PTA-FLA alleges that ZTE Corp. breached two agreements (neither of which was negotiated or entered into in South Carolina) by failing to ship complete base stations to Yakima, Washington and failing to ship handsets to an unspecified location. Neither of these allegations suggest any contacts with South Carolina related to these particular breaches. Although PTA-FLA alleges other contacts that ZTE Corp. had with South Carolina (namely, shipping the initial shipment of base stations to South Carolina), these have nothing to do with its breach of contract claim.

As a result, the district court correctly dismissed PTA-FLA's breach of contract claim for lack of personal jurisdiction.

B.

We next consider the district court's conclusion that PTA-FLA failed to allege a proper SCUTPA claim. To state a claim under SCUTPA, the plaintiff must show "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998); *see* S.C. Code Ann. § 39-5-140; S.C. Code Ann. § 39-5-20.

PTA-FLA contends that it properly pleaded the third element of a SCUTPA claim—adverse public impact—by alleging that ZTE Corp.'s faulty shipment of base stations delayed PTA-FLA's attempts to bring affordable wireless service to South Carolina residents and that ZTE Corp.'s actions had the potential for repetition based on the company's procedures and five examples of similar acts. ZTE Corp. responds that these allegations are not enough to support a claim of adverse public impact under SCUTPA.

The district court concluded first that the alleged public impact due to PTA-FLA's inability to provide services to consumers was too attenuated to support a SCUTPA claim. Second, the district court found that the other acts alleged by PTA-FLA to show potential for repetition did not involve deceptive shipments and thus were not similar in kind to the deceptive practice at issue. The court did not address PTA-FLA's allegations that ZTE Corp. followed a standard procedure of taking advantage of small U.S.-based wireless carriers.

There is no bright-line test detailing exactly what a plaintiff must show to satisfy the adverse public impact prong of a SCUTPA claim. *Daisy Outdoor Advert. Co. v. Abbott*, 473 S.E.2d 47, 51 (S.C. 1996). "[A]dverse effect on the public must be proved by specific facts." *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). "Conduct which only affects the parties to the transaction provides no basis for a [SCUTPA] claim." *Id.* Likewise, an allegation of adverse public impact that is too generalized or attenuated from the unfair trade practice alleged will not support a claim under SCUTPA. *See Wilson Grp., Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 427 (D.S.C. 1995).

11

One way a plaintiff can allege adverse public impact is by pleading facts demonstrating the potential for repetition of the defendant's actions. *Daisy*, 473 S.E.2d at 49–50. Potential for repetition may be demonstrated, for example, by: (1) "showing the same kind of actions occurred in the past," or (2) "showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *Crary v. Djebelli*, 496 S.E.2d 21, 23 (S.C. 1998).

PTA-FLA's complaint fails to allege facts that give rise to a plausible inference of adverse public impact. First, the allegation that ZTE Corp.'s actions delayed PTA-FLA's ability to provide cellular telephone service to South Carolina consumers is too generalized and attenuated to constitute adverse public impact under SCUTPA. *See Wilson Grp.*, 880 F. Supp. at 427 (rejecting claim that defendant's actions deprived patients of improved services as "too attenuated"). Second, although PTA-FLA alleges five other instances of deceptive practices by ZTE Corp., none is similar to the one on which PTA-FLA bases its SCUTPA claim.

Finally, PTA-FLA's allegation that ZTE Corp.'s "standard procedure" of "overpromising its capabilities to small carriers" shows the potential for repetition of the deceptive partial shipment at issue in this case is conclusory and unsupported by specific facts. *See Jefferies*, 451 S.E.2d at 23. PTA-FLA did not plead any facts that, if true, would push this bare assertion across the line from possibility to plausibility. *See Twombly*, 550 U.S. at 557. The allegation also bears no clear relation to the deceptive act in this case, nor does it suggest that future incomplete shipments are possible. The district court correctly dismissed this claim.

12

## III.

For the reasons given, we affirm the district court's judgment.

*AFFIRMED*